**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| ALI TAVAKOLI JOORABI, *et al.*, | ) ) ) | |
| *Plaintiffs*, | ) ) | |
| v. | ) ) | Case No. 1:20-cv-108-RCL |
| MICHAEL R. POMPEO, *et al.*, | ) ) ) ) | |
| *Defendants*. | ) ) | |

**MEMORANDUM OPINION**

On January 15, 2020, plaintiffs Ali Tavakoli Joorabi, Fatemeh Tavakoli Joorabi, Mohammad Tavakoli Joorabi, and Carpet & Floors Market, Inc. filed this lawsuit against defendants Michael R. Pompeo (in his official capacity as U.S. Secretary of State), Carl C. Risch (in his official capacity as Assistant Secretary for Consular Affairs), Chad F. Wolf (in his official capacity as Acting Secretary of the Department of Homeland Security), and David M. Satterfield (in his official capacity as U.S. Ambassador to Turkey). ECF No. 1. Plaintiffs allege that defendants have failed to adjudicate the Tavakolis' immigrant visa applications in a timely manner and have therefore violated the Administrative Procedures Act ("APA"). *Id.* Plaintiffs seek a writ of mandamus under 28 U.S.C. § 1361 compelling defendants to act on plaintiffs' applications. *Id.* Defendants have filed a Motion to Dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure ("Rule") 12(b)(1) and for failure to state a claim upon which relief can be granted under Rule 12(b)(6). Upon consideration of that motion (ECF No. 5), plaintiffs' opposition (ECF No. 6), and defendants' reply (ECF No. 7), the Court

will **GRANT** defendants' Motion to Dismiss and **ORDER** that this case is dismissed with prejudice.

## BACKGROUND

### I. PRESIDENTIAL PROCLAMATION 9645

The Immigration and Nationality Act ("INA") governs admission of aliens into the United States and normally requires a valid visa for entry. *See* 8 U.S.C. §§ 1181-1182, 1203. The person seeking a visa bears the burden of establishing that she "is not inadmissible" and "is entitled to the nonimmigrant, immigrant or refugee status claimed." 22 C.F.R. § 1361. Once a visa application is "completed and executed before a consular officer," the consular officer must either issue or refuse the visa. 22 C.F.R. § 42.81(a).

The INA gives the President broad authority to exclude aliens, providing:

> Whenever the President finds that the entry of any aliens or of any class of aliens into the United States would be detrimental to the interests of the United States, he may by proclamation, and for such period as he shall deem necessary, suspend the entry of all aliens or any class of aliens as immigrants or nonimmigrants, or impose on the entry of aliens any restrictions he may deem to be appropriate.

8 U.S.C. § 1182(f). Pursuant to Section 1182(f), the President signed Presidential Proclamation 9645 ("Proclamation"). 82 Fed. Reg. 45161 (2017). This Proclamation resulted in entry restrictions on Iran due to inadequate information-sharing practices. The Proclamation does provide for waivers on a case-by-case basis if a foreign national demonstrates that (i) denying entry would cause undue hardship; (ii) entry would be in the national interest; and (iii) entry would not pose a threat to the national security or public safety. Proclamation § 3(c)(i)(A)-(C). The applicant bears the burden of proving that he or she is entitled to this waiver. 82 Fed. Reg. at 45168, § 3(c).

The third prong of the test is necessary to prevent "foreign nationals who may commit, aid, or support acts of terrorism, or otherwise pose a safety threat" from obtaining a waiver. *Id.* at 45162, § 1. This involves lengthy security checks, which are quite time consuming. According to a report from the Department of State, more than 12,000 waiver applications have been found to meet the first two provisions of the test and are now under review to determine whether they meet the third provision. *See* Dep't of State Report: Implementation of Presidential Proclamation 9645 – December 8, 2017 to March 31, 2019 at 3.

## II. THE TAVAKOLIS' VISA APPLICATIONS[1]

Mr. Tavakoli, an Iranian citizen, received an offer of employment in 2016 to repair Persian rugs at Carpet & Floors Market, Inc. in Waldorf, Maryland. ECF No. 1 ¶¶ 1, 10. Because of the specialty nature of this position, the company submitted an I-140 Immigration Petition for Alien Worker to United States Citizenship & Immigration Services ("USCIS") on April 30, 2018. *Id.* at ¶ 10. USCIS approved the petition on May 14, 2018 and forwarded it to the Department of State National Visa Center ("NVC"). *Id.* at ¶ 11. Mr. Tavakoli paid the invoice fee and completed the DS-260 immigration visa application online on August 9, 2018 for himself and his two children, Fatemeh and Mohammad Tavakoli. *Id.* at ¶ 12-13. Mr. Tavakoli sent supporting documents to the NVC on October 1, 2018. *Id.* at ¶ 14. The NVC sent confirmation to Mr. Tavakoli that his application was complete and in processing on November 8, 2018. *Id.* at ¶ 16.

On December 7, 2018, Mr. Tavakoli received notice that the family's immigrant visa interviews were scheduled for January 8, 2019 at the U.S. Embassy in Ankara, Turkey. *Id.* at ¶

---

[1] Because the Court must make all inferences in plaintiffs' favor when ruling on a motion to dismiss, the Court has taken the facts set forth in this section directly from plaintiffs' Complaint for a Writ of Mandamus (ECF No. 1).

17. On December 21, 2018, Mr. Tavakoli requested a waiver under the Proclamation for himself and his children. *Id.* at ¶ 18. After attending their scheduled interviews in Ankara, Mr. Tavakoli received a letter from the Consular Section of the Embassy of the United States in Ankara stating that they were ineligible for visas pursuant to the Proclamation and that the decision could not be appealed, but a consular officer would review their eligibility for waivers. *Id.* at ¶ 19.

All three family members completed the necessary supplemental questionnaires on January 22, 2019. *Id.* at ¶ 22. On the same day, the Embassy confirmed receipt of the questionnaires, and the case has been under administrative processing since then. *Id.* The bottom of the email explicitly stated that waiver applications undergo an "extensive and time-consuming process" and that the State Department "cannot predict how long this processing will take." *Id.* Plaintiffs allege that the amount of time it has taken to adjudicate the waiver requests has imposed a hardship and financial loss on Carpet & Floors Market, Inc., as it is currently left without an expert repairer. *Id.* at ¶ 23. They also allege that it has imposed a hardship on the Tavakoli family, as they are left in a state of extreme uncertainty about whether they will be able to move to the United States, stay together as a family unit, etc. *Id.* at ¶¶ 23, 27. Plaintiffs allege that because of the new "enhanced, automatic screening process" for all applicants subject to the Proclamation, their waiver processing should be able to be completed within a matter of days. *Id.* at ¶ 28. They seek a Writ of Mandamus compelling defendants to act on their visa applications. *Id.* at p. 12.

## LEGAL STANDARDS

Rule 12(b)(1) requires courts to dismiss any case over which they lack subject-matter jurisdiction. Federal courts are courts of limited jurisdiction and only have power that is

expressly granted to them. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). It is the plaintiff's burden to establish that the Court has subject-matter jurisdiction. *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015).

Rule 12(b)(6) requires courts to dismiss any case wherein the plaintiff has failed to state a legal claim upon which relief can be granted. To survive a motion to dismiss for failure to state a claim, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When deciding a motion to dismiss under 12(b)(6), courts must construe the pleadings broadly and assume that the facts are as plaintiff alleges; however, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. Additionally, courts are not obligated to "accept as true a legal conclusion couched as a factual allegation." *Papsan v. Allain*, 478 U.S. 265, 286 (1986).

## ANALYSIS

As a preliminary matter, plaintiffs attempt to argue that although their underlying visa applications were denied, the entire visa applications technically remain open because their waiver requests are still being adjudicated. This argument fundamentally misunderstands the application process. The government already denied the Tavakolis' underlying visa applications in January of 2019 due to the Proclamation. Although that denial triggers the application process for obtaining a waiver of the Proclamation, that waiver request is separate from the underlying visa application. If the President wanted to make the waiver request process part of the underlying visa application, he could have written the Proclamation so as to have the agency wait

to make any determination about the underlying application until it had also processed the waiver request. Instead, however, it is only necessary to go through the waiver process if one's underlying visa application is first denied. The Court thus finds that plaintiffs' underlying visa applications are distinct from their waiver applications.

While plaintiffs' opposition suggests that they only challenge the visa applications as a whole because they believe that the entire process is still open due to the waiver requests, a liberal reading of the Complaint could suggest that the underlying applications are also being challenged. Therefore, each of the government's arguments about why this case should be dismissed must be separated into two categories: (i) the underlying visa application; and (ii) the waiver process. The Court finds that the doctrines of consular nonreviewability and mootness clearly bar review of the underlying visa applications, but these doctrines do not bar review of the government's ongoing adjudication of the waiver requests; however, plaintiffs have still failed to state a legally cognizable claim in regards to the waiver requests under the APA or any other statute, meaning that the entire case must be dismissed.

**I. DOCTRINE OF CONSULAR NONREVIEWABILITY**

The doctrine of consular nonreviewability recognizes that Congress has empowered consular officers with the exclusive authority to review a proper application for a visa when made overseas. *See* 8 U.S.C. §§ 1104(a), 1201(a), 1201(g). The Supreme Court clearly upheld the President's statutory authority to issue the Proclamation under 8 U.S.C. § 1182(f). *Trump v. Hawaii*, 138 S. Ct. 2392, 2408 (2018) (holding that the statute's "plain language . . . grants the President broad discretion to suspend the entry of aliens into the United States . . . based on his findings . . . that entry of the covered aliens would be detrimental to the national interest").

Because the underlying Proclamation is valid, the question becomes whether the doctrine of consular nonreviewability prevents the Court from reviewing decisions made pursuant to that Proclamation. The D.C. Circuit has explained the doctrine of consular nonreviewability as follows:

> In view of the political nature of visa determinations and of the lack of any statute expressly authorizing judicial review of consular officers' actions, courts have applied what has become known as the doctrine of consular nonreviewability. The doctrine holds that a consular official's decision to issue or withhold a visa is not subject to judicial review, at least unless Congress says otherwise.

*Saavedra Bruno v. Albright*, 197 F.3d 1153, 1159 (D.C. Cir. 1999).

In *Mostofi v. Napolitano*, this Court dismissed a case with some factual similarities based on the doctrine of consular nonreviewability. 841 F. Supp. 2d 208, 209 (D.D.C. 2012). In both cases, a consular officer abroad refused the plaintiff's visa application and reviewed the plaintiff's eligibility for a waiver. In *Mostofi*, the consular officer was located abroad in Australia, just as the consular officer in this case was located abroad in Turkey. Like the Tavakolis, the person seeking a visa was an Iranian citizen. The Court determined that the consular officer's final decision with regards to the visa application was not reviewable under this doctrine. The same is true in this case with respect to the Tavakolis' underlying visa applications—Congress has not expressly authorized judicial review of consular officers' visa determinations in this context, and thus the doctrine of consular nonreviewability prevents this Court from reviewing the government's denial of the Tavakolis' underlying visa applications.

The government argues that the doctrine of consular nonreviewability applies not only to the underlying denial of these visa applications, but also to any allegations of unreasonable delay in its adjudication of the waiver applications. The cases that the government cites in support of this argument, however, all involve *final* visa decisions. *See* ECF No. 5 at 17 (listing cases). As

explained above, the doctrine of consular nonreviewability clearly applies to final visa determinations, but it does not apply to challenges regarding decisions that are not yet final. The consular nonreviewability doctrine "is not triggered until a consular officer has made a *decision* with respect to a particular visa application." *Nine Iraqi Allies v. Kerry*, 168 F. Supp. 3d 268, 290 (D.D.C. 2016);[2] *see also Ghadami v. U.S. Dep't of Homeland Sec.*, 2020 U.S. Dist. LEXIS 47623, at *11-14 (D.D.C. Mar. 19, 2020) (finding that consular nonreviewability does not apply to a waiver request that is still in progress); *Bagherian v. Pompeo*, 2020 U.S. Dist. LEXIS 23321, at *7-8 (D.D.C. Feb. 11, 2020) (same); *Didban v. Pompeo*, 2020 U.S. Dist. LEXIS 6731, at *11 (D.D.C. Jan. 15, 2020) (same). This is because a nonfinal decision is not an exercise of the government's "prerogative to grant or deny applications." *Nine Iraqi Allies*, 168 F. Supp. 3d at 290-91. By defendants' own admission, the Tavakolis' waiver applications are still in "administrative processing," meaning that no final decision has been made.[3] Therefore, the doctrine of consular nonreviewability has not yet been triggered with respect to the waiver applications.

## II. APA

Defendants argue that regardless of whether the doctrine of consular nonreviewability applies, plaintiffs have failed to state a cognizable claim under the APA, and thus this case must be dismissed under Rule 12(b)(6). The APA does not provide a valid cause of action if another statute precludes judicial review through its "express language, . . . the structure of the statutory

---

[2] Defendants argue that this case is non-binding and thus is not applicable. The Court, however, finds Judge Kessler's reasoning persuasive and agrees with the logic of her Opinion.
[3] Although defendants have changed the descriptive wording of plaintiffs' application statuses, there has been no substantive change to their waiver statuses, and the facts as described above remain unchanged. ECF Nos. 6-1 & 6-2.

scheme, its objectives, its legislative history, [or] the nature of the administrative action involved." *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 345 (1984); *see* 5 U.S.C. § 701(a)(1). The APA also preserves "other limitations on judicial review" that predated the APA, including the doctrine of consular nonreviewability.[4] *Saavedra Bruno*, 197 F.3d at 1158.

Congress has made it clear that aliens cannot seek review of their exclusion orders under the APA. When the Supreme Court ruled that aliens could seek judicial review of exclusion orders under the APA if they were physically present in the United States (but not if they were physically outside of the United States), *see Brownell v. Tom We Shung*, 352 U.S. 180, 184-86 (1956), Congress responded by passing a statute barring judicial review of exclusion orders under the APA regardless of an alien's physical location, *see* Act of Sept. 26, 1961, Pub. L. No. 87-301, § 5(a), 75 Stat. 650, 651-53. The accompanying House Report explained that APA suits would "give recognition to a fallacious doctrine that an alien has a 'right' to enter this country which he [or she] may litigate in the courts of the United States[.]" H.R. Rep. No. 87-1086, at 33 (1961). Congress has also expressly foreclosed judicial review of visa revocations. 8 U.S.C. § 1201(i). Essentially, Congress has been clear on numerous occasions that it does not want courts reviewing agencies' visa determinations.

The APA's ban on judicial review extends beyond instances where such review has been expressly or impliedly prohibited. The APA also specifically exempts from judicial review "agency action [that] is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). In this case, there is no separate statute giving an applicant the right to a waiver or the right to have a waiver application adjudicated in a certain manner. Instead, waivers are governed solely by the Proclamation. The APA "does not expressly allow review of the President's actions," *Franklin v.*

---

[4] As previously discussed, however, the doctrine of consular nonreviewability only applies to the government's underlying denial of the visa applications and not to the waiver requests that are still in progress.

*Massachusetts*, 505 U.S. 788, 801 (1992), and "there is no private right of action to enforce obligations imposed on executive branch officials by executive orders." *Chai v. Carroll*, 48 F.3d 1331, 1338 (4th Cir. 1995).

Put another way, the Supreme Court made clear in *Trump v. Hawaii* that the President had the authority to issue this Proclamation under 8 U.S.C. § 1182(f), and the President was under no obligation to allow for waivers at all, as no separate statute or regulation requires waivers. The logical inference is that any right to have a waiver request adjudicated in a specific manner must be found in the Proclamation itself. The Proclamation, however, makes it abundantly clear that it does not create "any right or benefit, substantive or procedural" against the government. 82 Fed. Reg. at 45172, § 9(c). This means that plaintiffs have no right to have the waivers adjudicated in any specific amount of time,[5] and thus plaintiffs have failed to state a legally cognizable claim. The Proclamation commits the waiver process to the agency's discretion, and it does not impose on the agency any timing requirements for adjudicating a waiver request, meaning that there would be no judicially manageable standard for the Court to apply in determining whether the government has engaged in an unreasonable delay.[6] Under the APA, a plaintiff may not seek judicial review if the court "would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Cheney*, 470 U.S. 821, 830 (1985).

Plaintiffs nonetheless argue in their opposition that the Court does have a standard by which to judge whether there has been an unreasonable delay: the TRAC factors. In

---

[5] Plaintiffs' Complaint suggests that because the waiver requests are still being processed, the government has put these applications on hold or refused to process them. This, however, is clearly not the case. Just because plaintiffs are unhappy with the amount of time that their waiver requests have been pending does not mean that the government has refused to consider them. Rather, the government's decisions are still in progress, even if that progress is slow.
[6] Although the APA favors reviewability, that is not true where there are no judicially manageable standards for the Court to apply.

*Telecommunications Research & Action Center v. FCC*, the D.C. Circuit set forth factors to use in determining whether an administrative delay is unreasonable. 750 F.2d 70, 77-78 (D.C. Cir. 1984). Those factors are: (1) the time agencies take to make decisions must be governed by a "rule of reason;" (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling of a statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that the agency action is "unreasonably delayed." *Id.* at 79-80.

For the reasons already explained, however, the Proclamation itself governs defendants' handling of the waiver request, meaning that the TRAC factors are irrelevant here due to the Proclamation's express refusal to create any substantive or procedural rights. Moreover, even if the TRAC factors did apply, plaintiffs still could not demonstrate that the government has engaged in unreasonable delay. *See, e.g.*, *Ghadami v. U.S. Dep't of Homeland Sec.*, 2020 U.S. Dist. LEXIS 47623, at *23-24 (D.D.C. Mar. 19, 2020) (finding that a delay of approximately two years in adjudicating a waiver request under the Proclamation was not, as a matter of law, an unreasonable delay under the TRAC factors, and thus plaintiffs had failed to state a claim); *Bagherian v. Pompeo*, 2020 U.S. Dist. LEXIS 23321, at *16 (D.D.C. Feb. 11, 2020) (same); *Didban v. Pompeo*, 2020 U.S. Dist. LEXIS 6731, at *18-19 (D.D.C. Jan. 15, 2020) (same). The third waiver requirement involves complex and high-stakes considerations regarding national

security. There are thousands of waiver applications pending,[7] and it does not matter how many of those applications are ahead of or behind the Tavakolis'—the Proclamation has entrusted to the agency an important determination regarding national security, and the TRAC factors would account for the gravity of that decision.[8] It is thus not for the Court to tell the agency that a year and a half[9] is too long for a waiver request to remain pending, nor is it the Court's place to tell the agency how to prioritize its thousands of pending applications. Plaintiffs seem to forget that they have no right to a waiver; instead, it is their responsibility to prove that they deserve waivers. There is no statute requiring the government to adjudicate waiver requests in a certain order or within a certain amount of time, and thus no "rule of reason" has been violated. Therefore, even if the TRAC factors did apply to the waiver requests, plaintiffs have not set forth sufficient evidence to demonstrate that defendants have engaged in an unreasonable delay, and plaintiffs' claim would still fail as a matter of law.

As previously explained, plaintiffs' underlying visa applications are distinct from their waiver requests. Therefore, plaintiffs' reliance on 5 U.S.C. § 555(b) (requiring the agency to make a decision within a "reasonable time") and 22 C.F.R. § 42.81(a) (requiring the consular officer to "either issue or refuse the visa" once the application is completed) is misplaced—the consular officer in this case already met those requirements by denying the underlying visa

---

[7] Even if there were not thousands of applications pending, the Court would still dismiss this case for failure to state a claim, so any argument about the number of pending applications is not dispositive.

[8] Plaintiffs' Complaint alleges that plaintiffs do not pose a security threat. ECF No. 1 ¶ 25. Such a determination, however, is not one for the Court to make. That decision has been entrusted to the agency, and any argument about whether plaintiffs pose a security threat goes to the merits of the agency's ultimate decision, which the Court plainly lacks authority to review.

[9] Plaintiffs' Complaint suggests that their requests have been pending since May of 2018. ECF No. 1 ¶ 29. This assertion, however, fails to recognize that the underlying visa applications are separate from the waiver requests, which were completed in January of 2019. This means that the waiver requests have been pending since January of 2019, not May of 2018. Regardless of the precise date that the waiver requests were completed, however, the Court is not in a position to tell the government that it has taken too long to process these requests.

applications in January of 2019.[10] Any claim with respect to an underlying visa application itself is thus moot, as the government already made a final decision about that application. *See City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (explaining that a case is moot when "the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome"). The open waiver requests are separate from the initial visa requests and thus are not moot (but for the reasons explained above, plaintiffs have still failed to state a claim with respect to those waiver requests).

It should also be noted that plaintiffs' requested relief—a writ of mandamus—is an "extraordinary remedy" that is only appropriate "to compel the performance of a *clear nondiscretionary* duty." *Pittson Coal Grp. v. Sebben*, 488 U.S. 105, 121 (1988) (emphasis added). Because plaintiffs have no clear legal entitlement to these waivers or to have their waiver requests adjudicated within any specific timeframe, there is no "clear and nondiscretionary duty" that can give rise to the writ of mandamus that plaintiffs seek. This would be true even if the Court were to find that the TRAC factors applied, as those factors involve a great deal of discretion as well as the balancing of different interests; the TRAC factors thus do not impose the kind of "clear and nondiscretionary duty" required for a Court to issue a writ of mandamus when there has not been an unreasonable delay. Similarly, even if the APA provisions and regulations that plaintiffs cite did apply to the waiver requests, they fail to impose a clear and precise duty worthy of a writ of mandamus for the same reasons that they fail to create a judicially manageable standard of review. When "there is no clear and compelling duty under the statute"

---

[10] Even if 5 U.S.C. § 555(b) were applicable to the waiver request itself, that provision still would not create a judicially manageable standard, as the phrase "reasonable time" is exceeding vague and implies that the agency has a great deal of discretion. Likewise, even if 22 C.F.R. § 42.81(a) applied to the waiver request, that regulation does not provide any timing requirements for a final decision, meaning that it provides no judicially manageable standards for the Court to apply.

requiring the government to act, the Court may not issue a writ of mandamus and must dismiss the action. *In re Cheney*, 406 F.3d 723, 729 (D.C. Cir. 2005).

For these reasons, even when construing the allegations liberally and making all assumptions in plaintiffs' favor, plaintiffs have failed to state a legally cognizable claim that would entitle them to a writ of mandamus, meaning that the Court must dismiss the case. In making this decision, the Court is not saying that it approves of how defendants have handled waiver applications under the Proclamation; however, the Court lacks authority to compel the government to act on those applications. If plaintiffs wish to challenge defendants' actions, they must use the political process and seek relief from another branch of government.

## CONCLUSION

Based on the foregoing, the Court will **GRANT** defendants' Motion to Dismiss (ECF No. 5).

It will be **ORDERED** that this case is **DISMISSED** with prejudice.

A separate Order accompanies this Memorandum Opinion.

Date: May 17, 2020                                   /s/ Royce C. Lamberth
                                                     Royce C. Lamberth
                                                     United States District Court Judge